**SO ORDERED.**

**SIGNED this 9th day of September, 2014.**



_____
Janice Miller Karlin
United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: | |
| **Stephanie Marie Shojayi** | Case No. 13-23176 |
| | Chapter 7 |
| **Debtor.** | |
| **The Barstow School,** | |
| **Plaintiff,** | |
| vs. | Adversary No. 14-6014 |
| **Stephanie Marie Shojayi,** | |
| **Defendant.** | |

**Memorandum Opinion and Order Denying
Plaintiff's Motion for Summary Judgment and Granting Summary
Judgment for Defendant**

The issue I must decide is whether Congress intended to except from

discharge a debt in excess of $30,000 arising from a parent's promise to pay private school tuition for her young children who never then attended the school. Because the debt does not constitute a loan under 11 U.S.C. § 523(a)(8)(A), the Court denies the creditor's motion for summary judgment and instead grants summary judgment to the debtor.[1]

## I. Jurisdiction

Neither party disputes this Court's jurisdiction, and the Court has jurisdiction over this core proceeding under 28 U.S.C. § 157(b)(2)(I).[2]

## II. Legal Standard

A court should grant summary judgment if there is no genuine issue of material fact and the uncontroverted facts entitle the moving party to judgment as a matter of law.[3] An issue of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"[4] When the nonmoving party has failed to present sufficient evidence to allow a

---

[1] Docs. 24 and 31. Although Defendant's summary judgment motion was recently filed, counsel for both parties have waived the requisite response and reply deadlines allowed by D. Kan. LBR 7056.1(f) related to Defendant's motion since they have fully briefed the issues.

[2] 28 U.S.C. § 157(b)(1) and § 1334(b).

[3] *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012).

[4] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

reasonable jury to return a verdict in their favor on an essential element of his or her case with respect to which he or she has the burden of proof, judgment as a matter of law is appropriate.[5] On a motion for summary judgment, a court reviews the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party.[6] "Where, as here, the parties file cross-motions for summary judgment, [the Court is] entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[7]

### III. Uncontroverted Facts

Creditor, The Barstow School, operates a private school providing primary education from preschool through grade twelve. The school is funded, in large part, by the payment of tuition for attending students.

In January 2012, Defendant Stephanie Shojayi, the Debtor in the underlying bankruptcy, signed enrollment contracts for the academic year 2012-2013 promising to pay Creditor the sum of $27,610 in tuition and fees for her two children, who were going into kindergarten and second grade.

---

[5] *City of Albuquerque*, 667 F.3d at 1122.

[6] *Id.*

[7] *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

Debtor acknowledges reading, understanding, and accepting the terms of the contracts including her election of one of several payment plans available to pay the tuition and fees. The contracts stated, "I agree to pay The Barstow School the tuition amount for the entire school year and other charges when due and payable for the named student."

Debtor chose a monthly payment plan, which was to be "administered by" Smart Tuition. The first clause of the contracts states, "[t]uition is due in accordance with the payment plan as identified in the earlier section." The monthly payment plan—the one Debtor chose, requires the first payment be made on June 1 of the upcoming academic year. As a result, if a parent complies with the contract, she will have made the first payment well over two months before her child begins school, and will theoretically thereafter make each payment in advance of the month in which her child attends any classes. The contracts do not describe this transaction as a loan or an extension of credit, do not contain an acceleration clause, and Debtor did not sign any promissory notes.[8]

On July 1, 2012, Creditor placed tuition and fees for the entire 2012-13

---

[8] The enrollment contract states, "The Barstow School reserves the right to cancel this Enrolment Contract if the student or family has any unpaid account with the Barstow School, including, but not limited to any loan/note under which you are bound as borrower/debtor." This language is not describing the agreement created by the contract, which is addressed earlier in the same paragraph.

-4-

school year on bills for Debtor's children. The same day, entries termed "SMART Tuition Contract Credit" were credited to the same bills for the entire amount of the year's tuition, less any fees already paid. On August 23, 2012, entries termed "SMART Contract Change Terminate SMART Contract due to not attending school; trf back to student account" were charged to the same bills in the same amount as the credit from July 1, 2012. These transactions appear to be part of the Creditor's process for administering the monthly payment plan.

The contracts also provided that failure to cancel enrollment, in writing, by April 1, 2012, would subject the signer to liability for the full amount of tuition owed. The parties disagree on which date anyone informed the school that the children would not be attending. Debtor attached an affidavit to her motion from the children's father, and he swears to have orally contacted Creditor in March 2012 to advise of his change in financial condition necessitating him sending his children, instead, to public schools for the upcoming 2012-2013 school year. Creditor claims that it received written notice for the first time in July 2012. There is no dispute that neither of Debtor's children attended even a day at Barstow School for the 2012-2013 school year.

Both contracts provided, in the event of default, that Creditor was

entitled to a recover all interest, charges and fees, including attorneys' fees, incurred in the collection of past due amounts. When Debtor failed to make the payments required, Creditor filed a state court action in January 2013 that it entitled a "breach of contract" action. It sought damages for nonpayment of the tuition. Creditor did not assert it was a student loan. The state court entered a default judgment against Debtor for $30,345, plus post-judgment interest at 10% per annum.

In defense of this action, Debtor asserts several arguments[9] that Creditor insists are waived under the *Rooker Feldman* doctrine[10] because Debtor did not raise them in the state court proceeding. But the issue I must decide is whether the arrangement was an education loan, as in § 523(a)(8)(A). The parties agree that question was not addressed in the state court proceeding and is thus not barred by the doctrine.[11] Because the Court

---

[9] Those defenses include the contention that Debtor notified Barstow well in advance that her children would not attend, that the children received no benefit due to the fact they never attended class or used Barstow's resources, and that Barstow knew of Debtor's financial condition.

[10] *Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (barring a party losing in state court from seeking what in substance would be appellate review of the state judgment by a United States district court).

[11] Doc. 33, at 2 ("Barstow concedes that the issues before the State Court did not address whether such debts were nondischargeable student loans. Such issue was raised for the first time after Debtor filed for bankruptcy relief.").

resolves the case on the basis of this question, the Court need not address whether the *Rooker Feldman* doctrine would bar Debtor's other defenses.

## IV. Analysis and Conclusions.

Creditor argues that Debtor's debt is nondischargeable under 11 U.S.C. § 523(a)(8)(A);[12] Creditor does not specify which portion of that section forms the basis of its argument. With some limitations, § 523(a)(8)(A) bars discharge of

> "(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend."[13]

Subsection 523(a)(8)(A)(ii) applies only to funds received by a debtor. As no funds were received by Debtor in this case, that subsection does not apply, and indeed Creditor does not appear to base its argument on that subsection. Subsection 523(a)(8)(A)(i) applies to both educational benefit overpayments and loans, but Creditor alleges no overpayments here. The Court concludes that Creditor is thus arguing Debtor's debt is nondischargeable as an

---

[12] Doc. 1, at 3 ("All such charges and fees, plus interest thereon and attorney's fees, as reflected by the Judgment, are nondischargeable pursuant to Section 523(a)(8)(A) of the Bankruptcy Code.").

[13] 11 U.S.C. § 523(a)(8)(A).

-7-

educational loan made under a program funded in whole or in part by a nonprofit institution, pursuant to § 523(a)(8)(A)(i).

The parties agree that Creditor is a nonprofit institution and that the purpose of the underlying contract was for Debtor to pay school tuition for her childrens' education. This leaves only the issue whether the arrangement between Creditor and Debtor is an educational loan within the contemplation of § 523(a)(8)(A)(i).

In furtherance of the fresh start purpose of bankruptcy, exceptions to discharge are to be narrowly construed in favor of the debtor,[14] and a creditor seeking to except its claim from discharge must prove the claim is nondischargeable by a preponderance of the evidence.[15]

The word "loan" is neither defined in § 523(a)(8)(A) nor anywhere else in the Bankruptcy Code.[16] Words in a statute should be construed in an ordinary, everyday sense.[17] The definition of "loan" is a question of first impression in this Court, but a U.S. District Court for the District of Kansas

---

[14] *Bellco First Federal Credit Union v. Kaspar* (*In re Kaspar*), 125 F.3d 1358, 1361 (10th Cir. 1997).

[15] *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

[16] *New Mexico Instit. of Mining and Tech. v. Coole* (*In re Coole*), 202 B.R. 518, 519 (Bankr. D.N.M. 1996) ("The Bankruptcy Code contains no definition of the word 'loan.'").

[17] *Chickasaw Nation v. United States*, 208 F.3d 871, 876 (10th Cir. 2000).

has adopted a definition that appears to express the ordinary, everyday sense of the term:

> A loan of money is a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows. . . . In order to constitute a loan there must be a contract whereby, in substance one party transfers to the other a sum of money which that other agrees to repay absolutely, together with such additional sums as may be agreed upon for its use. If such be the intent of the parties, the transaction will be considered a loan without regard to its form.[18]

This definition would permit a court to find the existence of a loan when the party making the loan delivers a sum of money to the other party, which the recipient of the funds would have to repay. Even if the money were to go directly to pay the debts of the receiving party, without passing through the receiving party's hands, this definition would permit a court to find that the transaction qualified as a loan if the agreement between the parties reflects the existence of an extension of credit that the recipient was obligated to repay. Absent some intent by both parties to create a loan, however, the

---

[18] *Sec. Nat. Bank of Kansas City, Kan. v. Continental Ins. Co.*, 586 F. Supp. 139, 151 (D. Kan. 1982) (citing *In re Grand Union Co.*, 219 F. 353, 356 (2d Cir. 1915)). *In re Coole* would adopt an even more stringent reading, requiring that money change hands between the a plaintiff and a defendant, 202 B.R. at 519. But that definition appears to be too restrictive, because it would eliminate those loans where the loan maker pays a debt directly on the recipient's behalf.

transaction cannot be considered a loan.[19]

The Court notes that this definition mirrors the definition used by the Second, Third and Seventh Circuit Courts of Appeal. The Seventh Circuit explains the concept most concisely: "nonpayment of tuition qualifies as a loan in two classes of cases: where funds have changed hands, or where there is an agreement whereby the college extends credit."[20] The Eighth Circuit appears to endorse a similar definition, and these circuits appear to be the only circuits to address this particular question in any detail.[21]

Under this definition, even viewing the evidence and all reasonable inferences therefrom in the light most favorable to Creditor, the contracts in this case did not create loans for two reasons. First, the transactions were not structured as loans, because there is no suggestion that Creditor is advancing Debtor money to make the tuition payments. Second, the contracts and associated documents provide no evidence that the parties had the intent to create a loan.

The agreement between Creditor and Debtor does not create a loan or a

---

[19] *Id.*

[20] *In re Chambers*, 348 F.3d 650, 657 (7th Cir. 2003) (citations, alterations, and quotation marks omitted). *See also Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 89–90 (2d Cir. 2000) and *Boston Univ. v. Mehta (In re Mehta)*, 310 F.3d 308 (3d Cir. 2002).

[21] *HHS v. Smith*, 807 F.2d 122, 124 (8th Cir. 1986).

-10-

transaction that has the form of a loan. There is no reference to a deferral of due payments or paying payments due at the time of the contract at a later date. Instead, the contractual language allowed Debtor to select a payment plan. The contract further states that tuition payments were due according to the payment plan.

Debtor selected a monthly payment plan, and so according to the contract's internal logic, tuition payments became due only on a monthly basis. Nothing in the contract indicates a deferral of payment or any kind of credit arrangement between Debtor and Creditor. Further, monthly plan payments were to begin June 1, while the school year was to begin August 15. So, contrary to a deferral of payment, the contract contemplated that Debtor's payments would actually *precede* the receipt of educational services.

Under these undisputed facts, Creditor was not paying tuition for Debtor and then allowing Debtor to repay Creditor over time; rather, Creditor and Debtor agreed tuition payments would be paid in advance, on a monthly schedule. There was no credit given by Creditor. The undisputed facts show the agreement between the parties had neither the form nor the substance of a loan.

Further, there is no evidence that the parties sought to create a loan with the contracts in question. The agreements do not describe the

arraignment as a "loan" or "extension of credit," and there is no suggestion in the agreements that Creditor was advancing Debtor any funds or other benefits. And Debtor signed no promissory note. The only use of the terms "loan" or "note" in the enrollment contract comes in a sentence immediately after the contract describes what would happen if the Debtor failed to make the payments described in the contract. Thus, the contract provides a remedy for a breach of the contract due to Debtor's failure to make payments which is separate from the remedy "if the student or family has any unpaid account with the Barstow School, including, but not limited to any loan/note under which you are bound as borrower/debtor."[22] Juxtaposing these remedies further demonstrates that the contract itself did not create a loan agreement. Again, on their face, the agreements and the associated documents do not suggest that the parties intended to create a loan agreement.[23]

The Court notes that Creditor's internal accounting entries on the bills for Debtor's children appear to run contrary to the agreed contractual

---

[22] Doc. 24, at 23.

[23] *Ray v. Univ. of Tulsa, Works & Lentz, Inc* (*In re Ray*), 262 B.R. 544, 550 (Bankr. N.D. Okla. 2001) (refusing to find a loan absent a promissory note or other evidence that the parties intended to create a loan agreement). This is not to say that an arrangement like the one here could never constitute a loan. If the contract called for prepayment of the entire year's tuition, for example, and then clearly stated that Creditor or a third party was making a loan to Debtor for the cost of tuition, and that the monthly payments were to repay that loan—not to pay tuition when it came due, then such an arrangement might qualify as a loan.

-12-

language. There, Creditor charges the full year's tuition on July 1, with the label "Smart Tuition pay plan." Smart Tuition then immediately credits a year of tuition to the accounts. While this entry might suggest an extension of credit, it is not an agreement between Debtor and Creditor, it is contrary to the terms of the contract since it actually required Debtor to pay for the educational benefit in advance, and there is no evidence in the record that Debtor agreed to an extension of credit. In contrast, the contract between Debtor and Creditor merely states that monthly payments are to be administered by Smart Tuition, not that Debtor agrees to an extension of credit from Smart Tuition. The Creditor's conflicting internal accounting practices cannot transform a contractual debt into a student loan.

Creditor argues for a more expansive definition of the term "loan," but Creditor fails to cite any case where a court has found the existence of a loan absent a signed promissory note or other evidence of the parties' mutual intent to create a loan agreement. Creditor relies on *Gakinya v. Columbia College (In re Gakinya)*,[24] *Roosevelt University v. Oldham (In re Oldham)*,[25] and *McKay v. Vanderbilt University (In re McKay)*,[26] but the facts in those

---

[24] 364 B.R. 366, 373 (Bankr. W.D. Mo. 2007).

[25] 220 B.R. 607, 612 (Bankr. N.D. Ill. 1998).

[26] 66 B.R. 144, 148 (D. Or. 2007).

-13-

cases are all materially distinguishable from the facts here. For example, the students in *In re Gakinya* and *In re Oldham* both signed promissory notes, and the contract in *In re McKay* expressly discussed the school's "extension of credit." Creditor provides no statutory or case law support for its argument that a failure to pay tuition when due, absent any additional factors suggesting the parties contemplated a loan agreement, creates a student loan obligation.

## Attorney Fees

Debtor has requested an award of attorney's fees in her summary judgment motion, but she does not indicate the statutory or other basis for that relief. When she filed her answer to Barstow's complaint, she asked for those fees pursuant to Federal Rule of Bankruptcy Procedure 90ll(b). But she has not followed the prerequisites for obtaining a fee award required by Rule 9011(c)  In addition, no binding precedent existed in this Circuit defining an educational loan, and Creditor's argument for a broad definition was not entirely unfounded. As a result, the Court denies Debtor's  request for fees both procedurally and because Creditor's arguments were at least based on a nonfrivolous extension of current law, which also precludes an award of

-14-

attorney's fees under Rule 11.[27]

## Conclusion

Because the debt in question is not a student loan within the meaning of 11 U.S.C. § 523(a)(8), that statute does not prevent the discharge of this debt, and it will be discharged. Debtor's Motion for Summary Judgment is thus granted but without an award of attorneys' fees, and Creditor's motion is denied.

###

---

[27] To the extent that Debtor seeks fees under 11 U.S.C. § 523(d), the Court notes that such an award is permitted only "[i]f a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged." 11 U.S.C. § 523(d). Congress's decision to explicitly allow fee awards when debtors prevail against a § 523(a)(2) action suggests that fee awards are not contemplated when a creditor loses dischargeability complaints based on other subsections of § 523.

-15-

Case 14-06014    Doc# 36    Filed 09/09/14    Page 15 of 15